THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATHAN MATTHEWS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 23 C 455 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| MARCIN PROKOPIUK, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

On September 9, 2022, Plaintiff Nathan Matthews gathered with a group of partygoers in a parking lot. From the events that followed, Matthews alleges that Chicago Police Department ("CPD") officers performed an improper investigatory stop, illegally searched a vehicle, sparked a foot chase that damaged his property, used excessive force against him, falsely arrested him, and planted false evidence on his person. (*See* Dkt. 17). Matthews brought an action under 42 U.S.C. § 1983 against those involved that evening, including Officers Maniatas, Vabakos, Cuenca, Catalano, Kuc, Rangel, Perez, Martinez, Prokopiuk, and Michalowska. Defendants now move to dismiss the complaint. (Dkt. 43). For the following reasons, Defendants' Motion to Dismiss [43] is granted in part.

1

## BACKGROUND

In his Amended Complaint, Matthews requests this Court to "subpoena any and all Bodycam footage from all arresting officers and all officers who arrived on scene" so that the "courts [sic] will clearly see" how his rights were infringed. (Dkt. 17 at 13). Matthews also cites to "see Bodycam" throughout. (*See id.* at 10, 14, 18). As explained below, *infra* p. 5, the Court declines to convert Defendants' motion to dismiss to one for summary judgment. Thus, the Court cites to the body-worn camera footage only in instances where it is explicitly referenced by Matthews and expressly contradicts facts in the Amended Complaint. *See, e.g.*, Dkt. 17 at 6 ("See Officer Prokopiuk and Michalowska Bodycam," "See Officer Bodycam").

On September 9, 2022, Matthews and about 20 to 30 individuals left a family gathering and walked back to their cars. (Dkt. 17 at 6, 10, 14). They had gathered in a "private property and parking lot," and were drinking alcohol when CPD Officers Prokopiuk and Michalowska arrived and requested identification so they could "get you guys on your way." (*Id.*; Dkt. 43-1 at 2:00–02). To Matthews's knowledge, he had not done anything illegal and no "police calls were made against" him. (Dkt. 17 at 6, 10, 14). Officers Prokopiuk and Michalowska told Matthews and the others they were not under arrest and free to leave. (*Id.*)

As the crowd dispersed, the officers noticed an unattended woman's purse in the parking lot and asked a remaining female if the purse belonged to her. (*Id.*; Dkt 43-1 at 2:59–3:00). The female initially told Officer Prokopiuk the purse was hers and she intended to move it. (Dkt. 43-1 at 3:01–04). Matthews then picked up the purse and placed it in the open driver's seat of the female's car, leaving the door ajar. (*Id.* at 3:24–28). Officer Prokopiuk tried to reconfirm with the female that the purse was hers, but she did not respond. (*See id.* at 3:39–45).[1]

---

[1] In his Amended Complaint, Matthews pleads that he and the female explicitly stated the purse "belong[ed] to one of our associates whom [sic] forgotten it behind." (Dkt. 17 at 6).

2

The other partygoers dispersed, but Matthews remained, "help[ing] get the crowd to settle down," and cleaning up some of trash left behind. (Dkt. 17 at 6, 10, 14; Dkt. 43-1 at 3:00–4:00). Though Officers Prokopiuk and Michalowska attempted to leave, Matthews continued to verbally engage with Officer Prokopiuk in a combative manner, prompting the female to attempt physically separating Matthews and calming him down. (*See* Dkt. 43-1 at 3:30–4:10).

Matthews alleges that when he tried entering the female's car to leave, the officers "rush[ed]" him and "illegally gain[ed] entry" to the car. (Dkt. 17 at 7, 11, 15). Officer Prokopiuk directed Officer Michalowska to grab the purse from the open driver's seat, stating, "there's a gun in there." (Dkt. 43-2 at 4:12–19). Officer Prokopiuk recovered a firearm from the unattended purse. (*Id.* at 4:25–30). The female then rejected ownership of the purse, stating that it did not belong to her. (Dkt. 43-1 at 4:20–25; Dkt. 43-2 at 4:18–20). She also affirmed that the car was hers and added, "y'all can search this car, I don't care." (Dkt. 43-2 at 5:06–13).

After the encounter, Matthews proceeded to "r[u]n for his safety," jumping the gate to his backyard. (Dkt. 17 at 7, 11, 15). CPD Officers Martinez, Kuc, Perez, Rengel, Catalano, Cuenca, Vabakos, and Maniatis then arrived at Matthews's home. Matthews alleges they illegally gained entry to his yard by "destroy[ing]" the gate and proceeded to "beat" and "slam[]" his face, and "kick" and "punch" him in his head and body. (*Id.*) The officers allegedly had their knee Matthews's neck, making it difficult for him to breathe, then handcuffed and shackled Matthews in a manner resulting in deep cuts, bruising, and loss of circulation. (*Id.*) Matthews alleges all the arriving officers engaged in this conduct. (*Id.*) Ultimately, Matthews states he sustained injuries such as chest pain, scrapes and bruising on the right side of his face, wrists, and ankles, nerve damage on his hand, and a chipped front tooth. (*Id.* at 8–9, 12–13, 16–17). Matthews also states the gun found in the unattended purse "was illegally recove [sic] and put on me." (*Id.* at 8).

3

Matthews faced a criminal prosecution in the Cook County Circuit Court for possession of the weapon and aggravated battery of a peace officer, among other charges. *See People v. Matthews*, No. 22 CR 1109201 (Cir. Ct. Cook County 2022); Dkt. 43-17 at 1. Ultimately, on October 10, 2023, Matthews was sentenced to 27 months' imprisonment after pleading guilty to the charge of resisting a peace officer, 720 ILCS 5/31-1(A-7). (Dkt. 43 at 16; Dkt 43-17 at 1, 8–11). The other charges were dismissed pursuant to the plea agreement. (Dkt. 43 at 10).

In June 2023, the Court reviewed and narrowed Matthews's claims in granting his leave to proceed *in forma pauperis*, (Dkt. 16), allowing him to move forward with his claims of (1) illegal *Terry* stop and seizure, (2) illegal vehicle search, (3) false arrest, (4) planted weapon, and (5) excessive force. (*Id.* at 6, 8, 13). Defendants filed a motion to dismiss on September 25, 2023, (Dkt. 30). After Matthews failed to respond but noted a change of address, (Dkt. 40), the Court directed the Defendants to re-file their motion to dismiss to offer Matthews another opportunity to respond, (Dkt. 41). On December 19, 2023, Defendants re-moved to dismiss the complaint in its entirety based on the "unequivocal" showing of the Defendants' body-worn cameras. (Dkt. 43 at 5). Matthews still failed to respond to the motion to dismiss, so the Court rules without the benefit of his response.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and "draw[s] all reasonable inferences in the [plaintiff's] favor." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). The complaint's "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), must offer more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, to survive a defendant's motion to dismiss, "a complaint must contain

4

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Moreover, the court may consider "documents attached to the complaint" and "documents that are critical to the complaint and referred to in it." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quotation marks omitted). The court may view and weigh video recording content against the complaint's allegations in considering a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *see also Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992) (stating district courts may consider "any facts set forth in the complaint . . . that undermine the plaintiff's claim"). If the plaintiff did not attach the video recording to their complaint, the court may consider the video recording only if the plaintiff referenced it in the pleading and it is "central to the claim." *Citadel Group Ltd. v. Washington Regional Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). When an exhibit "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls." *Bogie*, 705 F.3d at 609. Yet, a court will not make fact determinations on a motion to dismiss. *Henderson v. Rangel*, No. 19 CV 06380, 2020 WL 5642943, at *4 (N.D. Ill. Sept. 21, 2020); *see e.g.*, *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2022) (noting that considering evidence outside of the pleadings requires converting the motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56). Rather, a court is asked to decide whether the complaint "states a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, so the video recording content is only "relevant and helpful when assessing whether it contradicts [the plaintiff's] factual allegations." *Hyung Seok Koh v. Graf*, No. 11 CV 02605, 2013 WL 5348326, at *10 (N.D. Ill. Sept. 24, 2013).

5

**DISCUSSION**

I.      **Illegal *Terry* Stop and Seizure**

Officers may "stop and detain briefly a person for investigative purposes when the officer has a reasonable suspicion, supported by articulable facts, that criminal activity is afoot." *United States v. Pace*, 48 F.4th 741, 749 (7th Cir. 2022) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). "To meet the reasonable-suspicion requirement, an officer must have 'a particularized and objective basis' for suspecting the persons detained of breaking the law." *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). Reasonable suspicion "embodies something less than probable cause," but it "requires more than a hunch or inchoate suspicion." *Id.* at 668 (quoting *United States v. Wilbourn*, 799 F.3d 900, 909 (7th Cir. 2015)). "The suspicious conduct may be ambiguous and susceptible to an innocent explanation, but the officers may detain the individual to resolve such ambiguity." *United States v. Carlisle*, 614 F.3d 750, 754 (7th Cir. 2010) (citing *Illinois v. Wardlow*, 528 U.S. 119, 125–26 (2000)).

Here, the officers had reasonable suspicion to engage in the encounter with Matthews in the first instance. The body-worn camera footage Matthews cites shows Officers Prokopiuk and Michalowska pulled up to a large group of people openly drinking alcohol in a parking lot, in violation of Chicago Municipal Code 8-4-030(a)(1) (2022). (Dkt. 43 at 7; Dkt 43-1). The officers had reasonable suspicion of illegal activity occurring in public and presumedly stopped to investigate.

Moreover, Matthews does not state a claim for illegal seizure. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "Only when the officer, by means of physical force or show of

authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (quoting *Terry*, 392 U.S. at 19, n.16). Relevant circumstances include whether the encounter occurred in a public place or the police moved the person to a private location; whether the officer told the person that he was free to leave; and whether the police limited the person's movement via physical touching, restraint, or other coercive conduct. *United States v. Ahmad*, 21 F.4th 475, 479 (7th Cir. 2021). The pleaded facts and body-worn camera footage Matthews cites all point to the initial encounter being consensual. The officers initially approached the group to ask a few questions and "get you guys on your way." (Dkt. 43-1 at 2:00–02). Matthews further states—and the body-worn camera footage corroborates—that the officers repeatedly told him and the group they were free to leave. (*Id.*; Dkt. 43-1 at 2:00–10); *c.f. Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) ("[A] person has been 'seized' within the meaning of the Fourth Amendment . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). While the rest of the crowd freely dispersed, Matthews chose to remain, cleaning up trash and continuing to engage with Officer Prokopiuk. Ultimately, Matthews did in fact leave, running home after the officers grabbed the unattended purse from the car. Even drawing all reasonable interferences in Matthews's favor, the Court is unpersuaded he was detained at all during the initial encounter.

As established above, Matthews has not pled an initial seizure. Yet, Matthews states that when he tried to enter the car, the officers "rush[ed]" him. (*See* Dkt. 17 at 7). Matthews's barebones statement that the officers "rush[ed]" him does not pass muster as an illegal seizure. *See Iqbal*, 556 U.S. at 663 ("[M]ere conclusory statements," are insufficient.). It is unclear from Matthews's facts whether Officer Prokopiuk's actions constituted a physical show of force or authority that restrained his liberty. Yet, Matthews pled he ran home after the physical encounter with Officer

7

Prokopiuk, leading the Court to infer he was not physically restrained or "seized." Lastly, though Matthews was in fact arrested by the officers at his home, this occurred only after Matthews resisted Officer Prokopiuk's attempt to search the purse, the officers discovered a gun in the purse, and Matthews had fled. At the time of his arrest, the officers had probable cause to arrest Matthews at least for battery to a peace officer and possession of a firearm. *See District of Columbia v. Wesby*, 583 U.S. 48 (2018) (holding a warrantless arrest valid if it is supported by probable cause); *United States v. Alexander*, 78 F.4th 346 (7th Cir. 2023) (same). Thus, Matthews's claims for illegal *Terry* stop and illegal seizure must be dismissed.

### II.     Illegal Search

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted). To the Court's knowledge, Officers Prokopiuk and Michalowska did not have a warrant to search the female's car or the unattended purse. Under the automobile exception, an officer may search a vehicle without a warrant if there is probable cause to do so. *United States v. Smith*, 989 F.3d 575, 581 (7th Cir 2021). Probable cause is a "common-sense inquiry requiring only a probability of criminal activity." *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (quotation omitted). Though probable cause "requires only a probability or substantial chance of criminal activity," "mere suspicion" is not enough. *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir. 1990) (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)).

Here, Officers Prokopiuk and Michalowska grabbed and searched the unattended purse from the open driver's seat of the female's car where Matthews placed it. Matthews states in his complaint that he and the female explicitly stated the purse "belong[ed] to one of our associates

whom [sic] forgotten it behind." (Dkt. 17 at 6). On the other hand, the body-worn camera footage Matthews cites shows the female initially states the purse is hers, but then continues to ignore Officer Prokopiuk's attempts to reconfirm once Matthews moves it. Only after the officers searched the purse and found the gun did she disavow ownership and offer the officers search her car. In sum, it is a closer question whether the officers had probable cause or consent to the search the female's car and the unattended purse at the time the gun was discovered.

Even so, Matthews's claim has an independent fatal flaw: the car and purse were not his. Thus, Matthews would gain no benefit to a finding that the search of the female's car was illegal as he has no "legitimate expectation of privacy" under the Fourth Amendment in a car that was not his. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Id.* at 133–34. In fact, a "person aggrieved by an illegal search and seizure" of a third person's property, "has not had any of his Fourth Amendment rights infringed." *Id.*

Like the car, Matthews has no reasonable expectation of privacy in the unattended purse. In fact, Matthews's statements and actions point to abandonment. No person can have a reasonable expectation of privacy in abandoned property, so it is not subject to Fourth Amendment protection. *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000). In determining whether a defendant abandoned property, courts "look at the totality of the circumstances, but pay particular attention to explicit denial of ownership and to any physical relinquishment of the property." *Id.* at 836. Here, Matthews pleads that he and the female explicitly stated the purse "belong[ed] to one of our associates whom [sic] forgotten it behind." (Dkt. 17 at 6). This statement and body-worn camera footage plead Matthews out of a claim, as a defendant's "disavowal of ownership" at the time of the search is sufficient to constitute abandonment. *United States v. Carlisle*, 614 F.3d 750, 757

9

(7th Cir. 2010); *see also United States v. Rush*, 890 F.2d 45 (7th Cir. 1989); *Bond v. United States*, 77 F.3d 1009 (7th Cir. 1996); *United States v. Smith*, 3 F.3d 1088 (7th Cir. 1993).

### III. False Arrest and Unlawful Pretrial Detention

"Probable cause acts as an absolute bar to a claim for false arrest." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citing *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010)). In fact, "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Id.* (quoting *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007)).

Matthews's claim must be dismissed as it is barred by *Heck*, and in any event, as discussed *infra* Section I, the officers had probable cause to arrest Matthews for at least resisting or obstructing a peace officer. Under *Heck v. Humphrey*, a plaintiff may not sue for damages under § 1983 if his claim rests on a version of events that negates the basis for his still-valid conviction. 512 U.S. 477 (1994); *Tolliver v. City of Chicago*, 820 F.3d 237, 239 (7th Cir. 2016). "A claim that is theoretically compatible with the underlying conviction may nonetheless be *Heck*-barred 'if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction.'" *Douglas v. Vill. of Palatine*, No. 17 CV 6207, 2020 WL 1469439, at *4 (N.D. Ill. Mar. 26, 2020) (quoting *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006)).

Therefore, though *Heck* does not preclude Fourth Amendment claims even if conviction has resulted, *Wallace v. Kato*, 549 U.S. 384, 394 (2007), Matthews's contention of lack of probable cause for the arrest necessarily implies the invalidity of his conviction of resisting or obstructing a peace officer. 720 ILCS 5/31-1(A-7); (Dkt. 43 at 16; Dkt 43-17 at 1, 8–11). Here, Matthews was convicted of "the very behavior that would have constituted probable cause for [his] arrest."

*Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *7 (N.D. Ill. Nov. 4, 2013), *aff'd sub nom. Chriswell v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014). His claimed for false arrest must be dismissed.

IV. **Planted Weapon**

In arguing the officers planted the recovered firearm and used it to prosecute him in the Cook County Circuit Court, Matthews appears to be bringing a state law claim for malicious prosecution. To establish a claim for malicious prosecution under Illinois law, a plaintiff must establish: "(1) commencement of criminal proceedings by the defendants; (2) termination of the matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages." *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013). The Court allowed Matthews to "elaborate" on his barebones contention that "the gun was illegally "recover[ed] and put on me." (Dkt. 16 at 13; Dkt. 17 at 8). Matthews did not avail himself of that opportunity. "Mere conclusory" statements do not state a claim for relief. *See Iqbal*, 556 U.S. at 663. This claim is dismissed.

V. **Excessive Force**

The Fourth Amendment—applied to state actors via the Fourteenth Amendment—prohibits police officers from using excessive force when seizing a person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Whether an officer violated a suspect's rights depends on the reasonableness of the use of force." *Flowers v. Renfro*, 46 F.4th 631, 636 (7th Cir. 2022). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012)). The court can consider "the severity of the crime at issue, whether the

11

suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 397. An excessive force claim may also be predicated upon unreasonably tight handcuffs. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) ("A person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury.").

As discussed *supra* p. 2, the Court declines to convert this motion to dismiss to one for summary judgement and is not positioned to make fact determinations. In his Amended Complaint, Matthews alleges CPD Officers Martinez, Kuc, Perez, Rengel, Catalano, Cuenca, Vabakos, and Maniatis acted in concert to "beat," "kick," and "punch" him in his head and body and had their knee on his neck, among other improper conduct. (Dkt. 17 at 7). Matthews alleges his injuries included chest pain, scrapes and bruising on the right side of his face, wrists, and ankles, nerve damage on his hand, and a chipped front tooth. (*Id.* at 12–13). He further pleads injuries from excessively harsh handcuffing and shackling. (*Id.*) Upon these facts, Matthews states a claim for which relief can be granted. Yet, as Matthews does not allege Officers Prokopiuk and Michalowska engaged in the conduct, they are dismissed from this claim.

As a final point, the Defendants argue that in any event, the Amended Complaint should be dismissed based on qualified immunity. Generally, courts disfavor dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6) on qualified immunity grounds. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). At this juncture, the Court cannot fully determine the applicability of qualified immunity to the excessive force claims considering they involve deeply

fact-dependent issues. *See Brown v. City of Chicago*, 594 F. Supp. 3d 1021, 1039 (N.D. Ill. 2022). That issue will be reserved for future rulings.

## CONCLUSION

For these reasons, the Court grants Defendants' Motion to Dismiss [43] in part.

_____
Virginia M. Kendall
United States District Judge

Date: February 26, 2024